UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | | |
|---|---|---|
| DENNIS HOTHEM and KENDELL STEVENS, | ) ) ) | CIV. 10-5020-JLV |
| Plaintiffs, | ) ) | |
| vs. | ) ) | ORDER |
| DAVE SCHNEIDER, individually and as Mayor, and the CITY OF BELLE FOURCHE, SOUTH DAKOTA, | ) ) ) ) ) | |
| Defendants. | ) ) | |

**INTRODUCTION**

Plaintiffs Dennis Hothem and Kendell Stevens filed a complaint alleging the defendants, Dave Schneider, individually and as Mayor, and the City of Belle Fourche (the "City") engaged in age discrimination in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.*, ("ADEA") (alleging both disparate treatment and disparate impact); violated plaintiffs' First Amendment constitutional rights in violation of 42 U.S.C. § 1983; and wrongfully discharged plaintiffs in violation of South Dakota public policy. (Docket 1). Plaintiffs seek punitive damages against defendant Schneider, individually. Id. Both defendants filed answers denying plaintiffs' claims. (Dockets 16 & 17). Defendants filed separate motions for summary judgment on all claims. (Dockets 47 & 57). The court

referred the motions to Magistrate Judge Veronica L. Duffy for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).  (Docket 82).

On January 20, 2012, Magistrate Judge Duffy filed a report and recommendation.  (Docket 103).  The magistrate judge recommended the court (1) deny the City's motion for summary judgment on plaintiffs' ADEA-disparate treatment claims; (2) grant the City's motion for summary judgment on plaintiffs' ADEA–disparate impact claims; (3) grant defendants' motions for summary judgment on plaintiffs' civil rights claims; (4) grant the City's motions for summary judgment on plaintiffs' state law public policy claims; (5) grant defendant Schneider's motion for summary judgment on plaintiffs' official capacity claims; (6) grant defendant Schneider's motion for summary judgment as to plaintiffs' ADEA claims; and (7) grant defendant Schneider's motion for summary judgment on plaintiffs' state law public policy claims.  Id. at pp. 53, 54, 63, 65, 67 & 70.   Plaintiffs and the City filed objections.  (Dockets 104 & 106).  All parties filed responses and replies to the opposing parties' objections.[1]

---

[1]Fed. R. Civ. P. 72(b)(2) allows a party to respond to an opposing party's objections.  There is no provision in Rule 72(b)(2) or 28 U.S.C. § 636(b)(1) allowing a party to file a reply to a response to an opposing party's objections. The end  result of these multiple filings is the objections, responses and replies are longer than the report and recommendation (81 pages combined compared to 71 pages).

The court reviews *de novo* those portions of the report and recommendation which are the subject of objections.  Thompson v. Nix, 897 F.2d 356, 357-58 (8th Cir. 1990); 28 U.S.C. § 636(b)(1).  The court may then "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  28 U.S.C. § 636(b)(1)(C).  For the reasons stated below, plaintiffs' objections are granted in part and overruled in part and the City's objections are granted in part and overruled in part.  The report and recommendation of the magistrate judge is adopted in part, modified in part, and rejected in part as explained by this order.

## DISCUSSION

**A.    MAGISTRATE JUDGE'S FINDINGS OF FACT**

Plaintiffs' objections to the magistrate judge's findings of fact are summarized as:

1.   Whether the South Dakota Department of Environment and Natural Resources ("DENR")[2] issued a written reprimand to the City regarding asbestos removal;

2.   Whether DENR instructed the City to perform air monitoring during asbestos removal;

3.   Whether on the cost of insurance table Kellie Pummel highlighted the group for individuals in the 55-64 age brackets;

---

[2]In the report and recommendation, the magistrate judge mistakenly called  DENR the Department of Energy and Natural Resources.  (Docket 103 at p. 6).  The report and recommendation is modified to correctly identify the Department of Environment and Natural Resources.  See SDCL § 1-32-2(6).

4.  When did a series of e-mail communications occur regarding the termination of Mr. Hothem and Mr. Stevens;

5.  Whether an unemployment expense figure attributable to plaintiffs as of July 20, 2010, was accurate;

6.  Whether assisting with asbestos removal was reasonably contained in plaintiffs' job descriptions;

7.  Whether Mr. Hothem's speech regarding asbestos removal was part of his job duties;

8.  Whether the lack of an expressed antagonism by Mayor Schneider or Mr. Pummel defeats any claim of retaliation against plaintiffs for exercising their rights of free speech;

9.  Whether there was any temporal proximity between plaintiffs' asbestos complaints and their terminations;

10. Whether there was any contact with DENR regarding asbestos removal violations; and

11. Whether plaintiffs' terminations were the result of the issues surrounding asbestos removal.

(Docket 106) (*passim*).

Defendant City's objections ("defendant's objection(s)" or "City's objection(s)") to the magistrate judge's findings of fact are summarized as:

1.  Whether Mr. Hothem's date of return to employment with the City was in January of 2006;

2.  Whether the "purpose of the custodial-maintenance department" as expressed in the City's statement of undisputed material facts ("SUMF") No. 5 is factually relevant;

4

3.  Whether the "different job descriptions within the custodial-maintenance department before . . . restructur[ing]" as expressed in the City's SUMF No. 9 is factually relevant;

4.  Whether "[t]he work performed by the custodial-maintenance technicians before restructuring of the . . . department" as expressed in the City's SUMF No. 10 is factually relevant;

5.  Whether Ms. Landphere's calculations at page 15 fn. 11 of the report and recommendation should have been based on the City's SUMF No. 37;

6.  Whether Ms. Landphere's calculations in the City's SUMF Nos. 38, 39, 40, 41, and 42 are factually relevant;

7.  Whether the City's SUMF No. 54 is factually relevant;

8.  Whether the statement Mr. Smoot received a $3 per hour raise is in error;

9.  Whether Mr. Hauf was interviewed by Mr. Hothem when Ms. Penny Herman's position became available;

10. Whether the statements about Mr. Hoffman's salary increases and cost of living increase are in error;

11. Whether Mr. Bennett's statement about the position of the city council regarding the custodial-maintenance department is relevant;

12. Whether the City's disciplinary and grievance procedures are relevant to the termination of plaintiffs; and

13. Whether the statement "Mr. Hothem and Mr. Stevens were not provided any explanation or prior notice about their termination, nor were they given the opportunity to provide reasons why the action should not be taken, which Mr. Hothem and Mr. Stevens assert was in violation of the city's own policies" is relevant.

5

(Docket 104 at pp. 2-5).  Each of the parties' objections will be addressed separately.

**PLAINTIFFS' OBJECTIONS**

### 1.  WHETHER DENR ISSUED A WRITTEN REPRIMAND TO THE CITY REGARDING ASBESTOS REMOVAL

Magistrate Judge Duffy set out the background facts regarding the issue of asbestos tile removal at the City's police department.  (Docket 103, pp. 6-10).  Those facts need not be restated here.

Plaintiffs' objection focuses on whether the DENR issued a "written reprimand" to the City regarding asbestos removal.  (Docket 106 at p. 1). Plaintiffs' statement of material facts does not refer to any type of reprimand or warning from the DENR, let alone a written reprimand.  (Docket 68) (sealed) (*passim*).

Erin Schmidt, a DENR employee, described DENR's contact with the City and its employees relating to the asbestos removal issue.  (Docket 60). Her affidavit states "[t]o my knowledge, no notice of violation, written reprimand or any other type of disciplinary action or sanction whatsoever was issued against the City of Belle Fourche, its officials or employees, as a result of the [asbestos] incident."  Id. at ¶ 12.  Mr. Hothem testified he was shown a "warning letter" by City Building Inspector Martha Wierzbicki from

6

the DENR regarding asbestos removal.  (Docket 53-12 at pp. 125:20-25 &
128:9-24).[3]

Plaintiffs have not produced a "warning letter" or "reprimand letter"
from DENR.  Sufficient time to complete discovery was allowed to locate
such a letter if it existed.  There are no other citations to the record which
support plaintiffs' objection.

Plaintiffs' objection is overruled.

### 2.  WHETHER DENR INSTRUCTED THE CITY TO PERFORM AIR MONITORING DURING ASBESTOS REMOVAL

Plaintiffs' objections to defendant Schneider's SUMF ¶ 14 claims
"SDDENR specifically instructed the City of Belle Fourche to perform air
monitoring . . . ."  (Docket 95 at ¶ 14).  On September 27, 2009, Mayor
Schneider issued directives that all renovations and demolitions be
coordinated with Building Inspector Wierzbicki and that employees follow
state law.  (Docket 94 at ¶¶ 164-65).  One of those directives certainly would
include complying with the DENR fax regarding proper asbestos removal.
(Docket 60-1).  The instructions for asbestos removal were faxed by DENR to
Mr. Hothem on January 7, 2008.  Id.  Among other requirements for
removing asbestos, the instructions contain the following provisions:

------

[3]All citations to depositions will be to the particular page and lines of
the transcript and not to the page of the docket entry.

OSHA does not require monitoring for asbestos levels for most flooring removal jobs.  Monitoring is only required if compliant work practices are not followed, if the material is not removed intact, or if the employees are not properly trained . . . .

However, removal of non-intact floor tiles must be conducted in a negative pressure enclosure, and additional protective work practices, personal protective equipment, monitoring, and training must be provided. . . .

OSHA generally requires respirators be worn when Class II work, including removal of resilient floor coverings, is not performed using compliant work practices. . . .

(Docket 60-1).  This instruction sheet is the only evidence presented by either party addressing air monitoring.  Plaintiffs have not produced any evidence DENR required air monitoring by the City.

Plaintiffs' objection is overruled.

### 3. WHETHER ON THE COST OF INSURANCE TABLE KELLIE PUMMEL HIGHLIGHTED THE GROUP FOR INDIVIDUALS IN THE 55-64 AGE BRACKETS

Ms. Pummel, the City's insurance agent and wife of City Councilman David Pummel, provided health insurance quotes to the City for all of its employees as part of the 2010 budget process.  (Docket 87 at ¶¶ 47 & 48). City employees were separated into age brackets for premium analysis. (Docket 78-2).  On the health premium analysis table there are four sections highlighted:  "Quoted Coverage Ultra $1000 80/20 4100"; "Four Tier Rate Table"; in the age brackets 55-59 "Family $1,512.07"; and in the age bracket 60-64 "Family $1,980.70."  Id. at p. 16.  Plaintiffs argue Ms.

8

Pummel highlighted the costs of insurance for individuals falling in the 55-64 age brackets.  (Docket 106 at p. 2).  Plaintiffs' citation to the deposition of Mr. Hothem is not helpful to resolve the objection.  (Docket 71 at ¶ 47) (citing Hothem deposition at p. 166).  Mr. Hothem's deposition at page 166 offers no testimony on the highlighting of the health insurance table issue.  See Docket 73-1 at p. 166.  The City counters there is "no evidence as to **who** highlighted portions of the document or **when** portions of the document were highlighted."  (Docket 87 at ¶ 48) (emphasis in original).

Gloria Landphere, the City's finance officer, e-mailed Councilman Pummel saying "by the way I did those insurance numbers person by person . . . ."  (Docket 77-4 at p. 25).  But there is no testimony Ms. Pummel, or the City's agents, Councilman Pummel or Finance Officer Landphere, highlighted the insurance premium table.

Plaintiffs' argument, without more, does not create either an undisputed material fact or allow the court to consider plaintiffs' assertion as a fact for summary judgment purposes.[4]  Considering the actual testimony on this issue, the court finds there is insufficient evidence to determine by whom or when the highlighting occurred.

Plaintiffs' objection is overruled.

---

[4]The court is required to "consider the actual testimony" on the subject of a parties' objection.  Branch v. Martin, 886 F.2d 1043, 1046 (8th Cir. 1989).

9

### 4.  WHEN DID A SERIES OF E-MAIL COMMUNICATIONS OCCUR REGARDING THE TERMINATION OF MR. HOTHEM AND MR. STEVENS

Plaintiffs' objection asserts a series of e-mail communications occurred in "late August of 2009." (Dockets 106 at p. 2; 71 at ¶¶ 52-53 & 55; 77-4 at pp. 8-9 & 32-33).  Plaintiffs claim these discussions were prior to an e-mail of September 6, 2009, in which Councilman Pummel suggested the city council "eliminate [the] assistant superintendent [and] put (Hothem) on probation with bi-weekly reviews and monthly reviews." (Docket 71 at ¶ 55).

Each of the e-mails which are the subject of plaintiffs' objection are properly referenced and considered in the report and recommendation. (Docket 103 at p. 16 n. 12).

Plaintiffs' objection is overruled.

### 5.  WHETHER AN UNEMPLOYMENT EXPENSE FIGURE ATTRIBUTABLE TO PLAINTIFFS AS OF JULY 20, 2010, WAS ACCURATE

The report and recommendation stated "[t]he unemployment figure attributable to Mr. Hothem and Mr. Stevens as of July 20, 2010, was $5,567." (Docket 103 at p. 19).  Plaintiffs object to the use of this expense figure, as the City's 2010 total unemployment expense for Mr. Hothem and Mr. Stevens was $11,000.  (Docket 106 at p. 2).  The City acknowledges the minutes for the December 10, 2010, city council meeting reflect the total

unemployment for the calender year for the custodial-maintenance department was $11,000.  (Docket 107 at p. 7).  This amount was an additional appropriation request by the City Finance Officer for the 2010 year.  Id.  The report and recommendation is modified consistent with this order.

Plaintiffs' objection is granted.

### 6.   WHETHER ASSISTING WITH ASBESTOS REMOVAL WAS REASONABLY CONTAINED IN PLAINTIFFS' JOB DESCRIPTIONS

Plaintiffs' objection asserts "assisting with asbestos removal" was not part of plaintiffs' job descriptions, but rather "[t]he code inspector made clear that those issues were to go through her office."  (Docket 106 at p. 3).  The maintenance and custodial working supervisor job description had been in place since September 19, 2006.  (Dockets 74-4 at pp. 1-4 & 90-61).  The court finds "asbestos removal" was not specifically included in Mr. Hothem's job description.  But as the supervisor of the custodial-maintenance department, among other functions, Mr. Hothem had the following clearly defined duties:

[P]erform activities in the maintaining, repairing, and cleaning of physical structures . . . .

Other duties [as] may be assigned . . . .

Performs activities of workers supervised . . . .

11

> Oversee, coordinate, and supervise workers engaged in performing structural repairs to masonry, woodwork, and furnishings if [sic] buildings . . . .
>
> Perform other duties as deemed appropriate and necessary. . . .

(Docket 74-4 at pp. 1-3). Based on this job description, the court finds assisting with the removal of carpet and asbestos tiles was within Mr. Hothem's and Mr. Stevens' job duties. The report and recommendation at pages 57-58 is modified consistent with this analysis.

Plaintiffs' objection is overruled.

### 7. WHETHER MR. HOTHEM'S SPEECH REGARDING ASBESTOS REMOVAL WAS PART OF HIS JOB DUTIES

Based on the court's finding in plaintiffs' objection number 6, the court finds Mr. Hothem's speech regarding asbestos removal <u>was</u> part of his job duties. The report and recommendation at page 58 is modified consistent with this analysis.

Plaintiffs' objection is overruled.

### 8. WHETHER THE LACK OF AN EXPRESSED ANTAGONISM BY MAYOR SCHNEIDER OR MR. PUMMEL DEFEATS ANY CLAIM OF RETALIATION AGAINST PLAINTIFFS FOR EXERCISING THEIR RIGHTS OF FREE SPEECH

Plaintiffs argue "some individuals are better about hiding their feelings than others." (Docket 106 at p. 4). Neither plaintiffs' objection nor their justification for the objection direct the court to evidence which would support plaintiffs' position. Argument, without supporting evidence, does

12

not create a genuine issue of material fact.  Thomas v. Corwin, 483 F.3d

516, 527 (8th Cir. 2007).

Plaintiffs' objection is overruled.

### 9.   WHETHER THERE WAS ANY TEMPORAL PROXIMITY BETWEEN PLAINTIFFS' ASBESTOS COMPLAINTS AND THEIR TERMINATIONS

The report and recommendation indicates the first asbestos issue

arose "[i]n the fall of 2008 . . . ."  (Docket 103 at p. 5).  Mr. Hothem called

DENR on January 7, 2008, to inquire about the proper methods for

asbestos removal.  (Docket 60-2).  In response to his inquiry, DENR faxed

its instructions for asbestos removal to Mr. Hothem on January 7, 2008.

(Docket 60-1).  On January 31, 2008, DENR received a third-person

complaint about asbestos tiles being improperly removed from the City's

police department.  (Docket 60-2).  Mr. Baldwin from DENR completed an

investigation of the removal then in progress.  Id.  The undisputed evidence

clearly discloses asbestos removal first came up in  January of 2008, which

prompted Mr. Hothem's communications with DENR.

 The report and recommendation is modified to reflect this

clarification.  The remainder of the time line of activities regarding asbestos

tile removal is accurately stated in the report and recommendation.

Plaintiffs submit there is a temporal proximity between the asbestos complaints and the terminations of plaintiffs because "[o]ne of the complaints about asbestos was made August 24, 2009." (Dockets 71 at ¶ 139 & 75-2 at p. 23). Ms. Schmidt's e-mail of April 1, 2011, reflects the content of the August 24, 2009, complaint. (Docket 60-3). This complaint was from Nicole Shifar, a former police department secretary. Id. On August 25, 2009, Mr. Hothem explained the process of tile removal to Ms. Schmidt at DENR and encouraged her to come look to make sure the work was done correctly. Id. More important to the asbestos complaint issue, Chief of Police Maunders told Ms. Schmidt the next day that the complaining witness was "a disgruntled employee." Id.

Mr. Hothem claims he was terminated because he spoke out and challenged Mayor Schneider over the initial decision to complete the asbestos tile removal by using City employees. (Docket 1 at ¶ 44). That "speech" occurred in the spring of 2008[5] and was far removed from the City's initial discussion to eliminate plaintiffs' positions in late August 2009 and the decision to terminate those positions during the City Council meeting of September 8, 2009.

---

[5]Mr. Hothem testified there was no friction between he and Mayor Schneider or Councilman Pummel over the asbestos bids Mr. Hothem obtained. (Docket 53-12 at p. 124:15-23).

14

Plaintiffs' objection presents no evidence which was not already considered and rejected by the magistrate judge.  The court concludes there was no temporal proximity between the asbestos removal issue and Mr. Hothem's termination.[6]

Plaintiffs' objection is overruled.

## 10. WHETHER THERE WAS ANY CONTACT WITH DENR REGARDING ASBESTOS REMOVAL VIOLATIONS

The report and recommendation, as modified by this order, accurately sets out the nature of the contact between the City and DENR.  Plaintiffs' objection presents no evidence which was not already considered and rejected by the magistrate judge.

Plaintiffs' objection is overruled.

## 11. WHETHER PLAINTIFFS' TERMINATIONS WERE THE RESULT OF THE ISSUES SURROUNDING ASBESTOS REMOVAL

The report and recommendation, as modified by this order, accurately concludes there was no relationship between the asbestos removal issues

---

[6]"[A] party cannot avoid summary judgment by contradicting his own earlier testimony." Prosser v. Ross, 70 F.3d 1005, 1008 (8th Cir. 1995) (citing Wilson v. Westinghouse Electric Corp., 838 F.2d 286, 289 (8th Cir. 1988) (citing Camfield Tires, Inc., v. Michelin Tire Corp., 719 F.2d 1361, 1365-66 (8th Cir. 1983) ("A party should not be allowed to create issues of credibility by contradicting his own earlier testimony.")).  The court must be "mindful of [its] obligation to credit all of the evidence that favors the nonmovant, . . . but [the court is] not aware of any duty on [its] part to prune a witness's testimony so as to create a triable issue when the witness flatly contradicts himself in other parts of his testimony." Prosser, 70 F.3d at 1009 (referencing Liberty Lobby, 477 U.S. at 255).

and plaintiffs' terminations.  Plaintiffs' objection presents no evidence which was not already considered and rejected by the magistrate judge.

Plaintiffs' objection is overruled.

## DEFENDANT CITY'S OBJECTIONS

### 1. WHETHER MR. HOTHEM'S DATE OF RETURN TO EMPLOYMENT WITH THE CITY WAS IN JANUARY OF 2006

The report and recommendation found Mr. Hothem returned to employment with the City in January 2006.   (Docket 103 at p. 3). Defendant's objection asserts the parties agreed his date of return to City employment occurred in January 2007.  (Docket 104 at p. 2 ¶ 1).

Mr. Hothem testified he was offered a job and came back to work for the City in January 2006.  (Docket 53-12 at p. 22:19-21).  Mr. Hothem admitted his resume was wrong about his re-hire date with the City.  Id. at p. 33:1-13).  Plaintiffs' statement of facts, admitted by the City, states "[a]t the request of Mayor Schneider, Councilmember [sic] Tim Bennett approached Hothem in January of 2006 and requested that Hothem leave his job . . . and return to the City of Belle Fourche to serve as working supervisor to head up the Custodial and Maintenance Department." (Dockets 68 at ¶ 2; 87 at ¶ 2).  The City's statement of undisputed facts, admitted by plaintiffs, states "Dennis Hothem returned to employment with the City in January of 2007 as the supervisor of a newly-formed department

16

known as the custodial/maintenance department." (Dockets 52 at ¶ 2; 69 at ¶ 2). The City's Legal and Finance Committee voted on January 5, 2007, to hire Mr. Hothem as "Maintenance & Custodial Department Working Supervisor. . . ." (Docket 53-1).

The court finds Mr. Hothem was hired in January 2007. (Docket 86-1 at ¶ 6) (sealed) He was then 59 years of age. Id. The report and recommendation is modified consistent with this order.

Defendant's objection is granted.

### 2. WHETHER THE "PURPOSE OF THE CUSTODIAL-MAINTENANCE DEPARTMENT" AS EXPRESSED IN THE CITY'S SUMF NO. 5 IS FACTUALLY RELEVANT

The purpose of a custodial-maintenance department is traditionally "to do custodial and maintenance work . . . at buildings owned or occupied by the City." (Docket 52 at ¶ 5). Whether the work of the custodial-maintenance department was "formerly performed by the . . . City Recreation Center" is not a fact material to the summary judgment motion. Id. Defendant does not indicate the significance of its proposed undisputed fact or its materiality.

Defendant's objection is overruled.

### 3. WHETHER THE "DIFFERENT JOB DESCRIPTIONS WITHIN THE CUSTODIAL-MAINTENANCE DEPARTMENT BEFORE RESTRUCTURING" AS EXPRESSED IN THE CITY'S SUMF NO. 9 IS FACTUALLY RELEVANT

Defendant asserts the job descriptions of the custodial-maintenance department before restructuring are material to the "replacement issue" raised later in defendant's objections.  (Docket 104 at ¶ 3).  Those job descriptions are: "custodial/maintenance supervisor (Dennis Hothem), custodial/maintenance assistant supervisor (Kendall Stevens) and all other employees were custodial maintenance technicians."  (Docket 52 at ¶ 9).

The court finds the City's "job descriptions" are not job descriptions, in fact, but rather job titles.  Whether a person is called a "maintenance & custodial working supervisor," and an "assistant custodial/maintenance supervisor" or "custodial/maintenance supervisor" and an "assistant maintenance & custodial working supervisor," does not materially affect the job duties to be performed on a day-to-day basis.  The differences in these job titles are not material.

Defendant's objection is overruled.

### 4. WHETHER "THE WORK PERFORMED BY THE CUSTODIAL-MAINTENANCE TECHNICIANS BEFORE RESTRUCTURING OF THE DEPARTMENT" AS EXPRESSED IN THE CITY'S SUMF NO. 10 IS FACTUALLY RELEVANT

Defendant's SUMF No. 10 does not describe "work performed by custodial-maintenance technicians" but provides a summary of some of the

18

work performed by these employees.  Regardless, defendant acknowledges "it is not a material issue of fact that will affect the outcome of the case if Pearson, Hothem, and Stevens handled *most or all* of the heavy work." (Docket 86 at ¶ 10) (emphasis in original).

Defendant's objection is overruled.

### 5.   WHETHER MS. LANDPHERE'S CALCULATIONS AT PAGE 15 FN. 11 OF THE REPORT AND RECOMMENDATION SHOULD HAVE BEEN BASED ON THE CITY'S SUMF NO. 37

The City objects to the magistrate judge's reference to plaintiffs' responses to the City's SUMF No. 37.  (Docket 104 at pp. 2-3).  The City would prefer there be no discussion of plaintiffs' generalized objection.  In reviewing the City's SUMF No. 37, plaintiffs' objection (Docket 86 at ¶ 37), and the footnote at page 15 of the report and recommendation, the court finds the footnote to be a fair comment on the state of the evidence.  The City's claim of saving approximately $37,754.54 is accepted for what it was intended to be a–budget estimated savings for 2010.

Defendant's objection is overruled.

### 6.   WHETHER MS. LANDPHERE'S CALCULATIONS IN THE CITY'S SUMF NOS. 38, 39, 40, 41, AND 42 ARE FACTUALLY RELEVANT

The City's SUMF No. 38 is, in part, a restatement of SUMF No. 37, discussed above.  The hourly wage increases for Mr. Smoot and Mr. Hoffman are addressed in the report and recommendation.  (Docket 103 at

pp. 21-22).  SUMF No. 39 focuses on the City's budget work relating to the
library–resulting in a $21,696 savings, and the receptionist-secretary
position in the City Engineer's Office being reduced to part-time with a
savings of $13,023.  These positions are mentioned at pages 16, 17, and 18
of the report and recommendation.  (Docket 103 at pp. 16-18).  SUMF No.
40 discussed dispatch savings and health insurance premium reductions
city-wide.  Reduction of dispatch costs and employee health insurance
premiums are generally mentioned at page 46 of the report and
recommendation.  Id. at p. 46.  SUMF No. 41 discusses reducing full-time
positions to part-time positions to save wages and benefits.  These types of
budget saving activities are mentioned at pages 15, 16, 18, 22, 41, 42, and
45 of the report and recommendation.  Id. at pp. 15, 16, 18, 22, 41, 42 &
45.  While the costs of the activities mentioned in SUMF No. 42 may not be
separately identified, the report and recommendation acknowledges "[u]nder
the comprehensive budgetary plan voted on by the council, the council
eliminated positions in the library and in custodial/maintenance; reduced
hours of employees in the finance office and the engineering office; and
voted to reduce dispatch costs and the city's share of premiums for
employee health insurance."  Id. at p. 46 (citing Docket 54 at p. 22) (which
references the City's SUMF ¶¶ 33-49).  The total restructuring cost savings
of $113,723 in the 2010 budget is adequately considered in the report and

recommendation.  Considering the 2010 budget adjustments, the report and recommendation concludes its analysis of the City's SUMFs by determining "[t]he city's proffered reasons for the elimination of Mr. Hothem's and Mr. Stevens' positions are legitimate and nondiscriminatory."  Id. at p. 46.

Defendant's objection is overruled.

### 7.  WHETHER THE CITY'S SUMF NO. 54 IS FACTUALLY RELEVANT

The report and recommendation specifically mentions Mr. Smoot was promoted "to the position of custodial/maintenance technician IV/foreman . . . ."  Id. at p. 21.  The elimination of the custodial-maintenance department and transfer of duties to the public works department would necessarily require a new position in the public works department.  The creation of the new position in the public works department is implied in the general discussion of the report and recommendation.

Defendant's objection is overruled.

### 8.  WHETHER THE STATEMENT MR. SMOOT RECEIVED A $3 PER HOUR RAISE IS IN ERROR

Mr. Smoot was given a $2.06 per hour raise, from $12.46 to $14.52 per hour, at the time of his promotion on December 7, 2009.  (Docket 103 at pp. 21, n. 18 & 22).  He was then given a 3% cost of living increase on January 1, 2010, bringing his hourly wage rate to $14.96.  Id. at p. 21, n. 18.  This is a $3 per hour raise in 24 days.  Each of the elements of this

raise calculation is adequately explained in the report and recommendation.

Defendant's objection is overruled.

### 9. WHETHER MR. HAUF WAS INTERVIEWED BY MR. HOTHEM WHEN MS. PENNY HERMAN'S POSITION BECAME AVAILABLE

The record discloses when Penny Herman resigned in August 2009, Mr. Hothem interviewed Jeff Hauf on September 3, 2009, to fill her position as a custodial maintenance technician in the custodial-maintenance department.  (Docket 86 at ¶¶ 61 & 62).  The report and recommendation specifically noted "[o]n or about September 3, 2009, Mr. Hothem interviewed Jeff Hauf for this position and recommended to the council that Mr. Hauf be hired."  (Docket 103 at p. 42 n. 25).

Defendant's objection is overruled.

### 10. WHETHER THE STATEMENTS REGARDING MR. HOFFMAN'S SALARY INCREASES AND COST OF LIVING INCREASE ARE IN ERROR

Mr. Hoffman received a salary increase from $23.96 per hour to $27.51 per hour effective December 7, 2009.  (Docket 86 at ¶ 66).  He then received a 3% cost of living increase on January 1, 2010, which brought his total hourly rate to $28.34 per hour.  The report and recommendation is modified accordingly.

Defendant's objection is sustained.

### 11. WHETHER MR. BENNETT'S STATEMENT ABOUT THE POSITION OF THE CITY COUNCIL REGARDING THE CUSTODIAL-MAINTENANCE DEPARTMENT IS RELEVANT

Defendant objects to the magistrate judge including a statement from Mr. Hothem's deposition made by Councilman Bennett. (Docket 104 at p. 4 ¶ 11). It is clear from Mr. Hothem's deposition he was repeating what Councilman Bennett stated as his own opinion as a member of the City Council and not as a statement intending to bind the entire council. (Docket 53-12 at p. 78:18-25). There is no inference either Mr. Hothem, in his presentation of Councilman Bennett's statement, or Councilman Bennett, in his statement itself, was intending to bind the entire city council.

Defendant's objection is overruled.

### 12. WHETHER THE CITY'S DISCIPLINARY AND GRIEVANCE PROCEDURES ARE RELEVANT TO THE TERMINATION OF PLAINTIFFS

The magistrate judge simply referred to the City's disciplinary and grievance procedures as plaintiffs claim they were terminated in violation of the City's own policies. (Docket 103 at p. 20). The report and recommendation does not make the City's disciplinary and grievance procedures a part of the ultimate conclusion in the case.

Defendant's objection is overruled.

23

**13. WHETHER THE STATEMENT "MR. HOTHEM AND MR. STEVENS WERE NOT PROVIDED ANY EXPLANATION OR PRIOR NOTICE ABOUT THEIR TERMINATION, NOR WERE THEY GIVEN THE OPPORTUNITY TO PROVIDE REASONS WHY THE ACTION SHOULD NOT BE TAKEN, WHICH MR. HOTHEM AND MR. STEVENS ASSERT WAS IN VIOLATION OF THE CITY'S OWN POLICIES" IS RELEVANT**

Plaintiffs' statement of material facts states "[o]n November 16, 2009, Hothem and Stevens were told to bring their keys and then were terminated during an Open [sic] session of the City Council at the end of the meeting without explanation, notice or the opportunity to give reasons why the action should not be taken." (Docket 87 at ¶ 86).  The City admits this statement is true.  Id.  The magistrate judge simply referred to this statement as plaintiffs' claim they were terminated in violation of the City's own policies.  (Docket 103 at p. 20).  The report and recommendation does not make the City's disciplinary and grievance procedures a part of the ultimate conclusion in the case.  Nor does the report and recommendation condemn the City's action even though its action was taken "without explanation, notice or the opportunity to give reasons why the action should not be taken." (Docket 87 at ¶ 86).  This is a fair statement of the undisputed facts, even without reference to the City's own policies and procedures.

Defendant's objection is overruled.

**B.     MAGISTRATE JUDGE'S CONCLUSIONS OF LAW**

Plaintiffs filed no objections to the magistrate judge's conclusions of law and recommendations.  Defendant City's objections to the magistrate judge's conclusions of law and recommendations are summarized as:

> There is an insufficient factual basis to support a claim that indirect evidence exists which would support a jury finding that the elimination of the positions of Mr. Hothem and Mr. Stevens constituted disparate- treatment, that is, plaintiffs cannot make a prima facie case of unlawful age discrimination because:
>
> A.   At step three of the analysis, Mr. Hothem and Mr. Stevens were not meeting their employer's reasonable expectations at the time of the adverse action;
>
> B.   At step four of the analysis, plaintiffs cannot prove:
>
> > 1.   They were individually "replaced" by another City employee; and
> >
> > 2.   If plaintiffs were "replaced," the replacing employees were not "substantially younger" than plaintiffs;
>
> C.   Plaintiffs cannot satisfy their burden of proof that the City's reasons were pretextual.

(Docket 104 at pp. 6-49).  Each of the City's objections to the conclusions of law in the report and recommendation will be addressed separately.

25

1.  **AT STEP THREE OF THE ANALYSIS, MR. HOTHEM AND MR. STEVENS WERE NOT MEETING THEIR EMPLOYER'S REASONABLE EXPECTATIONS AT THE TIME OF THE ADVERSE ACTION**

The City argues the magistrate judge used the wrong standard in evaluating step three of the McDonnell Douglas[7] burden-shifting analysis. (Docket 104 at p. 7).  Instead of accepting the analysis of Haigh v. Gelita USA Inc., 632 F.3d 464, 469-70 (8th Cir. 2011), used by the magistrate judge, the City asks the court to accept the reasoning of the district court in Jelsma v. City of Sioux Falls, 744 F. Supp. 2d 997 (D.S.D. 2010), and other decisions of the district court.  (Docket 104 at pp. 8-9).  Defendant's objection asserts plaintiffs "were not meeting the City's reasonable expectations when their positions were eliminated."  Id. at p. 9.  If the court uses this standard for step three in the burden-shifting analysis,  defendant argues plaintiffs would not satisfy "the third element of their prima facie case."  Id. at p. 10.

Jelsma was a case evaluating summary judgment under both the Americans with Disabilities Act ("ADA") and the ADEA.  Jelsma, 744 F. Supp. 2d at 1003.  The court acknowledged the standard language of step three of the burden-shifting analysis under the ADEA requires a plaintiff to establish a prima facie case by proving "(3) was meeting the employer's

_____

[7]McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).

reasonable expectations at the time of the adverse action . . . ." Id. at 1013.
The court concluded that is the same analysis required on an ADA claim.
Id.  Under the ADEA, the court said "[t]he third element is similar to the
essential duties analysis in the ADA claim as discussed above and Jelsma
has put forth sufficient evidence to meet this element." Id.  Without further
explanation of the difference between an ADEA and ADA analysis, the court
found under the ADA claim Mr. Jelsma presented sufficient facts he was
"qualified to perform the essential functions of his position with a
reasonable accommodation when he submitted his resignation."[8] Id. at
1009.

In Riley v. Lance, Inc., 518 F.3d 996 (8th Cir. 2008), an ADEA case,
the United States Court of Appeals for the Eighth Circuit looked at the
district court's requirement that Riley "show a genuine issue of fact as to
whether he was performing his job at the level that met the employer's
legitimate expectations." Id. at 1000 (internal citation and quotation marks

---

[8]To satisfy the second element of the burden-shifting analysis under ADA
a plaintiff "must first show that he 'meets the necessary prerequisites for the
job, such as education, experience, and training,' and second, that he 'can
perform the essential job functions, with or without reasonable
accommodation.' " Jelsma, 744 F. Supp. 2d at 1007 (citing Hatchett v.
Philander Smith College, 251 F.3d 670, 674 (8th Cir. 2001) (emphasis added).
The district court concluded "Jelsma can satisfy the first prong by virtue of
having previously held the position." Id.   The second part of the step two
analysis under the ADA is the accommodation provision which is not relevant
to an ADEA claim.

omitted).  The Eighth Circuit ruled "[t]his was error. . . . Riley needed only to show he was 'otherwise qualified' for the position he held."  Id. (citing Arnold v. Nursing and Rehabilitation Center at Good Shepherd, LLC, 471 F.3d 843, 846 (8th Cir. 2006) and Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 142 (2000)).  "Since [Mr. Riley] had been performing the . . . job successfully for years, he met that requirement of the prima facie case."  Id.

The court accepts the magistrate court's analysis and use of the standard "plaintiff must show only that he possesses the basic skills necessary for performance on the job, not that he was doing it satisfactorily."  (Docket 103 at p. 32) (citing Haigh v. Gelita USA, Inc., 632 F.3d 464, 469 (8th Cir. 2011) (citing McGinnis v. Union Pacific Railroad, 496 F.3d 868, 874 n. 2 (8th Cir. 2007).  To require plaintiffs to "disprove the reasons given for the discharge during [plaintiffs'] prima facie case, [would] short-circuit[] the analysis under McDonnell Douglas."  Haigh, 632 F.3d at 470 (citing McGinnis 496 F.3d at 875 n. 3).  The Haigh court accepted the reasoning of McGinnis, concluding its reasoning was "more sound under the burden-shifting framework because the plaintiff should not be tasked with anticipating and disproving his employer's reasons for termination in his prima facie case."  Id.

The logic of McGinnis and Haigh has been accepted in other employment discrimination settings since Haigh.  In Lake v. Yellow

Transportation, Inc., 596 F.3d 871 (8th Cir. 2010), a racial discrimination in employment case, the court examined whether plaintiff was required to show he met his employer's "legitimate expectations" versus the "qualified for the position" standard of McDonnell Douglas.  Id. at 874.  The court ruled "Lake is not required to disprove Yellow's reason for firing him at this stage of the analysis. . . . If he were, the McDonnell Douglas burden-shifting analysis would collapse into the second element of the prima facie case."  Id. at 874.  Similarly, in an ADEA case involving a reduction-in-force ("RIF"), Rahlf v. Mo-Tech Corporation, Inc., 642 F.3d 633 (8th Cir. 2011), the Eighth Circuit looked to the element "he met the applicable job qualifications."  Id. at 637.  The court ruled Rahlf was "qualified for a position at the company after the RIF. . . . Rahlf satisfies the . . . element of the prima facie case."  Id. (referencing Arnold, 471 F.3d at 846 ("finding that employees were required to show only that they were qualified for the job, not that they would excel or even meet reasonable expectations.").

Defendant's objection to the step three analysis is denied.

### 2. AT STEP FOUR OF THE ANALYSIS, PLAINTIFFS CANNOT PROVE THEY WERE INDIVIDUALLY "REPLACED" BY ANOTHER CITY EMPLOYEE

The parties acknowledge the process the City used in terminating plaintiffs' positions was a work force reduction or reduction in force (collectively "RIF").  (Dockets 54 at p. 18; 67 at p. 6; 68 at ¶ 56).  The

29

magistrate judge concluded genuine issues of material fact exist as to whether Mr. Hothem and Mr. Stevens were replaced by Mr. Smoot and Mr. Hauf, respectively.  (Docket 103 at pp. 40 & 42 n. 25).  Defendant objects to these conclusions.  (Docket 104 at pp. 21-22 & 25).

In their analysis, plaintiffs focused the court on the elements of an ADEA claim set out in Roeben v. BG Excelsior Ltd. Partnership, 545 F.3d 639 (8th Cir. 2008).  (Docket 67 at p. 12).  However, Roeben was not an ADEA claim based on a RIF, but rather termination allegedly involving theft of hotel property.  Roeben, 545 F.3d at 642.  Plaintiffs then base the remainder of their ADEA argument on Riley, 518 F.3d at 999 (poor job performance), Arnold, 471 F.3d at 846 (patient abuse), and McGinnis, 496 F.3d at 873 (poor job performance).  (Docket 67 at p. 12).  Plaintiffs do not focus on the elements of an ADEA claim in a RIF setting in their resistance to defendant City's motion for summary judgment.

Defendant City urges the court to accept the rationale and rules of the United States Court of Appeals for the Sixth Circuit in Barnes v. GenCorp Inc., 896 F.2d 1457 (6th Cir. 1990).  (Dockets 54 at p. 18; 104 at 10). Barnes was an ADEA case involving a RIF.

> A work force reduction situation occurs when business considerations cause an employer to eliminate one or more positions within the company.  An employee is not eliminated as part of a work force reduction when he or she is replaced after his or her discharge. However, a person is not replaced when another employee is assigned to perform the plaintiff's duties in addition

> to other duties, or when the work is redistributed among other
> existing employees already performing related work. A person is
> replaced only when another employee is hired or reassigned to
> perform the plaintiff's duties.

Barnes, 896 F.2d at 1465.  "Of course an employer could not avoid liability

by changing the job title or by making minor changes to a job indicative of

an attempt to avoid liability.  Further, a plaintiff could attempt to show that

the force reduction was itself pretextual."  Id.  In a RIF analysis, "a plaintiff

could establish a prima facie case by showing that he . . . possessed

qualifications superior to those of a younger co-worker working in the same

position as the plaintiff."  Id. at 1466.

The magistrate judge initially cited two cases which were not RIF

based ADEA cases:  Richmond v. Bd. of Regents of University of Minnesota,

957 F.2d 595 (8th Cir. 1992), and Lewis v. St. Cloud State University, 467

F.3d 1133 (8th Cir. 2006).  (Docket 103 at pp. 30-31).  Based on Lewis, the

magistrate judge concluded plaintiffs could establish a prima facie case of

age discrimination by proving the following elements:

> [T]he employee (1) was at least 40 years old; (2) suffered adverse
> employment actions; (3) was qualified for his job or that he was
> meeting the employer's reasonable expectations at the time of the
> adverse actions; and (4) was replaced by someone substantially
> younger.

(Docket 103 at pp. 30-31) (citing Lewis, 467 F.3d at 1137).  But then, the

magistrate judge acknowledged "[i]n a reduction-in-force analysis, under the

fourth prong, the plaintiff must "come forward with additional evidence that

31

age was a factor in his termination in order to establish a *prima facie* case."

Id. at p. 31 n. 21 (citing Holley v. Sanyo Manufacturing, 771 F.2d 1161, 1165-66 (8th Cir. 1985).

The magistrate judge focused her analysis on Cova v. Coca-Cola Bottling Co. of St. Louis, Inc., 574 F.2d 958 (8th Cir. 1978).  (Docket 103 at p. 35).  Cova was a ADEA case based on a RIF.  Id. at 960.  The court used the following ADEA elements:

> [A] plaintiff may establish a prima facie case that his or her discharge violated the Age Discrimination in Employment Act by showing (1) that he or she is within a protected age group, (2) that he or she met applicable job qualifications, (3) that despite these qualifications, he or she was discharged, and (4) that, after the discharge the position remained open and the employer continued to seek applications from persons with similar qualifications.[9]

Id. at 959.[10]

---

[9]Subsequent Eighth Circuit cases convert the fourth step to "(4) there is some additional evidence that age was a factor in the employer's action."  See Ward v. International Paper Co., 509 F.3d 457, 460 (8th Cir. 2007) and Rahlf, 642 F.3d at 637.

[10]The facts of Cova judged against these elements were as follows.  Coca-Cola's plant manager notified four plaintiffs, ages 53, 55, 59 and 62, "that there was no place for them in the reorganized sales department and that they were discharged."  Cova, 574 F.2d at 960.  Approximately thirty days later, the manager hired ten new sales representatives, "all of whom were under 40."  Id. "Some of these ten individuals filled vacancies.  For others, new positions were created and within three months . . . there were seventeen management positions in the sales department the same number of positions that had existed before the plaintiffs were discharged."  Id.  "In defense, defendant produced evidence of the decline of [the] business and its substantial losses in an effort to explain radical changes following the takeover.  [The manager] described the nature of his reorganization of the sales department and the new

Notwithstanding the analysis required in an ADEA case based on a RIF, the magistrate judge changed focus to a non-RIF ADA-ADEA case, Christensen v. Titan Distribution, Inc., 481 F.3d 1085 (8th Cir. 2007). (Docket 103 at p. 35).  With the shift in focus, the magistrate judge failed to return to the ultimate issue in plaintiffs' case - the issue is not whether plaintiffs were "replaced" by younger workers, but rather, whether "after the discharge the position remained open and the employer continued to seek applications from persons with similar qualifications." Cova, 574 F.2d 959. "In a non-RIF ADEA case, [the fourth step] requirement may be met by producing evidence that a substantially younger worker replaced the plaintiff. . . . In a RIF case, however, the plaintiff's job is eliminated and/or redistributed to other workers." Ward, 509 F.3d at 461.

The question remaining in the analysis of this case is whether plaintiffs were "qualified for any position existing after the RIF . . . ." Rahlf, 642 F.3d at 637.  Plaintiffs were originally qualified for the positions they held before the RIF and, with the separation of the administrative duties

_____

programs he implemented.  He testified that he had been directed to reduce the size of the management staff and he gave his reasons for discharging the plaintiffs rather than other individuals." Id.  The manager also testified about numerous reasons, other than age, upon which he based his decision to terminate the plaintiffs.  Id. at 960-61.  Affirming the district court's grant of summary judgment, the court held "[t]here appears to have been a trend toward younger employees but in several instances [the manager] retained or hired persons within the protected age group." Id. at 961.  Thus, the court found no error in the district court's ruling.  Id.

over to Mr. Hoffman, it would appear Mr. Hothem and Mr. Stevens would be qualified to work within the public works department and still qualify to perform the manual labor type of activities which Mr. Smoot and Mr. Hauf were hired to perform. "Absent the administrative duties that Mr. Hothem performed, the duties of Mr. Smoot are very similar to those of Mr. Hothem's position." (Docket 103 at p. 39). "Mr. Hauf performed many of the same duties that Mr. Stevens performed. The city acknowledges that other than the few administrative duties Mr. Stevens assisted Mr. Hothem with that Mr. Stevens did the same custodial work the custodial/maintenance technicians did." Id. at p. 42. "Additionally, there is no evidence indicating that Mr. Stevens' duties were simply parceled out or redistributed among other employees." Id. After plaintiffs' positions were terminated, the City continued to seek employees with qualifications similar to plaintiffs' qualifications.

> (A]lthough the city asserts there was a reduction-in-force, the record indicates that the positions were not in fact eliminated or consolidated . . . . Rather, Mr. Smoot's and Mr. Hauf's new positions were very similar to Mr. Hothem's and Mr. Stevens' positions. . . . [T]he City never offered Mr. Hothem and Mr. Stevens the opportunity to apply for these 'new' positions, for which they were obviously qualified since the duties under the 'new' positions were the same duties previously performed by Mr. Hothem and Mr. Stevens. No offer was made to Mr. Hothem to continue performing as the supervisor for the custodial/maintenance department minus some administrative duties. Additionally, no offer was made to Mr. Stevens to continue as a custodial/maintenance technician with reduced hours and benefits. Rather, it appears that the city terminated Mr. Hothem

and Mr. Stevens and then promoted and hired new individuals to
fill very similar roles at equivalent or nearly equivalent salaries.

Id. at pp. 44-45.  "Mr. Hothem and Mr. Stevens point out that the only

individuals whose positions were terminated or had their hours reduced

were all older than 55."  Id. at p. 45.  "Though not determinative of age

discrimination, this fact is sufficient to make a prima facie case."  Rahlf, 642

F.3d at 638.

Applying the proper analysis standard required by Cova, Ward, and

Rahlf, defendant's objection is overruled.  The report and recommendation

is modified to reflect this analysis.  That part of the report and

recommendation in conflict with this analysis is rejected.

### 3.   IF PLAINTIFFS WERE "REPLACED," THE REPLACING EMPLOYEES WERE NOT "SUBSTANTIALLY YOUNGER" THAN PLAINTIFFS

Defendant's objection focuses on the age comparison between Mr.

Hothem and Mr. Smoot.[11]  (Docket 104 at p. 26).  At the time of his

termination Mr. Hothem was 62 years of age and Mr. Smoot was nine years

younger at age 53.  (Dockets 103 at p. 34 & 104 at p. 26).  Defendant's

objection is this nine-year age difference does not satisfy the "substantially

younger" requirement of the fourth prong of plaintiffs' prima facie case.

---

[11]Defendant does not object to the magistrate judge's finding Mr. Hauf
was substantially younger than Mr. Stevens because of the thirteen-year
difference in their ages.  (Dockets 103 at pp. 42-43 ).

(Docket 104 at p. 26).  Defendant cites <u>Girten v. McRentals, Inc.</u>, 337 F.3d 979 (8th Cir. 2003) as authority for its objection.  <u>Id.</u>  <u>Girten</u> was also considered by the magistrate judge.  (Docket 103 at p. 40).  The court in <u>Girten</u> addressed a nine-year age difference:

> The nine-year age difference between Mr. Girten and his replacement may not be sufficient to infer age discrimination. *Cf.* <u>Schiltz v. Burlington N. R.R.</u>, 115 F.3d 1407, 1412-13 (8th Cir. 1997) (holding that a five-year age disparity is insufficient to infer discrimination) with <u>Keathley v. Ameritech Corp.</u>, 187 F.3d 915 (8th Cir. 1999) (holding that a fourteen-year age difference is sufficient to infer age discrimination).

<u>Girten</u>, 337 F.3d at 982.  The <u>Girten</u> court questioned the nine-year age difference because of the weakness in plaintiff's prima facie case.  <u>Id.</u>

In <u>Chambers v. Travelers Companies, Inc.</u>, 668 F.3d 559 (8th Cir. 2012), the court concluded an eight-year difference in an ADEA claim was not "sufficiently younger."  <u>Id.</u> at 566 (referencing <u>Schiltz</u>, 115 F.3d at 1413 (a five-year age difference is insufficient to establish a prima facie case).  The court in <u>Chambers</u> also referenced <u>Grosjean v. First Energy Corp.</u>, 349 F.3d 332, 338–39 (6th Cir. 2003), *cert. denied*, 541 U.S. 1010 (2004).  <u>Id.</u>  The court in <u>Grosjean</u> collected cases from other circuits in which an age difference "of less than ten years [is] not significant enough to make out the fourth part of the age discrimination prima facie case."  <u>Id.</u> at 338.  Some of the cases referenced in <u>Grosjean</u> were:

> <u>Girten v. McRentals</u>, 337 F.3d 979, 981 (8th Cir.2003) (stating that replacement of 63-year old by 54-year old may be

insufficient); <u>Radue v. Kimberly-Clark Corp.</u>, 219 F.3d 612, 619 (7th Cir. 2000) (termination of 53-year old while retaining 46-year old and 44-year old, without more, insufficient); . . . <u>Dunaway v. Int'l Bhd. of Teamsters</u>, 310 F.3d 758, 767 (D.C. Cir. 2002) (replacement of employee by other 7 years younger insufficient without more); . . . <u>Wassel v. Mutual Life Ins. Co.</u>, 164 F.3d 633, 1998 WL 700537, at *1 (9th Cir. 1998) (table) (replacement by person 6 years younger insufficient); . . . <u>Cramer v. Intelidata Techs. Corp.</u>, 168 F.3d 481, 1998 WL 911735, at *3 (4th Cir. 1998) (table) (replacement of employee with person 5 years younger insufficient); <u>Wellman v. Wheeling & Lake Erie Ry. Co.</u>, 134 F.3d 373, 1998 WL 25005, at *4 (6th Cir. 1998) (table) (replacement of 46-year old with 41-year old insufficient); . . . <u>Schiltz v. Burlington N. R.R.</u>, 115 F.3d 1407, 1412 & n. 6 (8th Cir. 1997) (where six positions that 48-year old plaintiff applied for were filled by persons aged 43, 46, 51, 55, 48, and 47 no prima facie age discrimination case exists) . . . .

<u>Id.</u> at 338-339.  "Without more" the nine-year difference between Mr. Hothem and Mr. Smoot may not satisfy the "substantially younger" criteria of <u>Chambers</u>.[12]  However, when considered in light of the health insurance premium examination conducted by the city council, the fact that only three employees, all in their 50s, were terminated in the RIF and the proximity between plaintiffs' terminations and the hiring of Mr. Smoot and Mr. Hauf, the court concludes plaintiffs have satisfied their fourth step burden and have presented a prima facie case of age discrimination.  "Though not

_____

[12]"That a younger employee assumed some of plaintiff's duties does not establish a prima facie case because often [in a RIF] at least one younger worker receives some of plaintiff's duties." <u>Ward</u>, 509 F.3d at 461. "The ADEA does not require that every plaintiff in a protected age group be allowed a trial simply because he was discharged during a reduction-in-force." <u>Id.</u> (citing <u>Holley</u>, 771 F.2d at 1165–66).

determinative of age discrimination, this [circumstantial evidence] is sufficient to make a prima facie case." <u>Rahlf</u>, 642 F.3d at 638.

Defendant's objection is overruled.

### 4.   PLAINTIFFS CANNOT SATISFY THEIR BURDEN OF PROOF THAT THE CITY'S REASONS WERE PRETEXTUAL

The magistrate judge concluded "The city's proffered reasons for the elimination of Mr. Hothem's and Mr. Stevens' positions are legitimate and nondiscriminatory." (Docket 103 at p. 46).  At the next step of the <u>McDonnell Douglas</u> burden-shifting analysis, plaintiffs are required to show the City's reasons for termination of plaintiffs' positions were pretextual.  <u>Id.</u> pp. 46-47 (citing <u>Haigh</u>, 632 F.3d at 470).  Defendant's objection argues the magistrate judge failed to properly evaluate the facts in light of plaintiffs' burden to show pretext.  (Docket 104 at  46).

In <u>Gross v. FBL Financial Services, Inc.</u>, 557 U.S. 167, 129 S. Ct. 2343 (2009), the United States Supreme Court declared:

> We hold that a plaintiff bringing a disparate-treatment claim pursuant to the ADEA must prove, by a preponderance of the evidence, that age was the "but-for" cause of the challenged adverse employment action. The burden of persuasion does not shift to the employer to show that it would have taken the action regardless of age, even when a plaintiff has produced some evidence that age was one motivating factor in that decision.[13]

-------------------

[13]"Congress amended Title VII to allow for employer liability when discrimination 'was *a motivating* factor for any employment practice, even though other factors also motivated the practice,' 42 U.S.C. § 2000e–2(m) (emphasis added), but did not similarly amend the ADEA . . . . We must give effect to Congress' choice." <u>Gross</u>, 129 S. Ct. at 2350 n. 3.

Id. at 2352.  The Eighth Circuit incorporated the "but-for" requirement into its burden-shifting analysis.  Haigh, 632 F.3d at 468.  "[T]he showing of pretext necessary to survive summary judgment requires more than merely discrediting an employer's asserted reasoning for terminating an employee. A plaintiff must also demonstrate that the circumstances permit a reasonable inference of discriminatory animus."  Id. at 470 (internal citation omitted).  "At all times, the plaintiff retains the burden of persuasion to prove that age was the "but-for" cause of the termination."  Rahlf, 642 F.3d at 637.

"In determining whether a plaintiff has met its burden with respect to pretext in a summary judgment motion, a district court is prohibited from making a credibility judgment or a factual finding from conflicting evidence." Yates v. Rexton, Inc., 267 F.3d 793, 800 (8th Cir. 2001).  "In a reduction-in-force case, two additional general rules apply. The ADEA does not authorize a court to judge the wisdom of a company's business decision to reduce its workforce in response to economic pressures. . . . However, even within the context of a legitimate reduction-in-force, an employer may not fire an employee because of his age."  Id.

The magistrate judge accepted six reasons given by plaintiffs that the City's termination decision was pretextual.  Those reasons, together with the analysis of each, are:

### (1) There was no reduction-in-force

Plaintiffs acknowledge the City was properly concerned about an anticipated short-fall for the 2010 budget year but do not believe a RIF was necessary or, in fact, occurred.  The magistrate judge properly noted the City was entitled to the business judgment rule.  (Docket 103 at p. 47).  The court is not authorized to "judge the wisdom of [the City's] business decision to reduce its workforce in response to economic pressures."  Yates, 267 F.3d at 800.  Furthermore, the court "may not second-guess an employer's personnel decisions, and we emphasize that employers are free to make their own business decisions, even inefficient ones, so long as they do not discriminate unlawfully."  Haigh, 632 F.3d at 471 (internal citation omitted).  The ADEA "do[es] not prohibit employment decisions based upon . . . unsound business practices."  Id. (internal citation omitted).  The court finds any claim the City's decision to engage in a RIF was pretextual fails.

Defendant's objection is sustained and the report and recommendation is modified to reflect this conclusion.

### (2) Health care premium costs evaluation focused on the older employees age brackets (55-64)

The undisputed evidence disclosed only three employees were terminated in the RIF–plaintiffs, plus the assistant librarian who was over 55 years of age.  (Docket 103 at p. 51 n. 27).   The magistrate judge concluded this "smacks of age discrimination."  (Docket 103 at p. 52).

40

"Employment decisions motivated by characteristics other than age (such as salary and pension benefits), even when such characteristics correlate with age, do not constitute age discrimination." Hanebrink v. Brown Shoe Co., 110 F.3d 644, 647 (8th Cir. 1997).  The remainder of the relevant evidence, particularly focused upon the three positions, is the assistant librarian's position was terminated and never reinstated, Mr. Smoot was 53 (which caused a marginally lower health insurance premium expense to the City), and Mr. Hauf was initially hired for less than 20 hours per week and was later  increased to 35 hours per week without insurance benefits.  These actions support the City's argument its focus was the reduction of expenses and not elimination of older employees.  The City's efforts at reducing employee benefits by terminating three positions and either not filling or involving part-time or less-than-full time employees to avoid employee benefits costs is not evidence of pretext by the City.

Defendant's objection is sustained and the report and recommendation is modified to reflect this conclusion.

### (3) The City had a changing number of reasons for its termination decisions

The City initially concluded termination of the plaintiffs' positions was necessary as part of a RIF based on "economic realities facing the City and the desire for more efficient and cost effective services . . . ."  (Dockets 86 at ¶ 52 & 87 at ¶ 42).  The magistrate judge thought this changed to include

performance-related issues with the testimony of Councilman Pummel. (Docket 103 at p. 50) (citing Docket 53-14 at pp. 35-36).  Mr. Pummel testified he was concerned because:

> [t]he custodial-maintenance department was contracting out a lot of stuff that we thought should have been done in-house and there was [sic] a lot of things that they just wouldn't do . . . we started just turning to the Public Works Department because they had a guy there that was pretty handy and they started doing a lot of those duties anyway.  And so it was a pretty easy decision.
>
> It didn't really seem like those guys were really towing their weight . . . so when I was looking, as legal finance chairman, for places to cut because it became real apparent that we had to cut positions, I was looking at the places that causes the least pain and this was one [cutting the custodial-maintenance department].

Docket 53-14 at p. 36:2-16).  Finally, the magistrate judge concluded the argument the City got "more bang for its buck with Kim Smoot than it got with Mr. Hothem" was a "varying explanation[]" for the City's elimination of the custodial-maintenance department.  (Docket 103 at p. 51).

City counsel's argument that it got "more bang for its buck" is just that, an argument and not a change in the City's position.  The court finds the decision of the City to eliminate the custodial-maintenance department was never a "performance" issue against either plaintiff, but rather an efficiency comparison between departments which ultimately warranted the City's action.

Defendant's objection is sustained and the report and recommendation is modified to reflect this conclusion.

**(4) Plaintiffs were not offered the opportunity to fill the "newly created" positions**

The City argues under the business judgment rule it did not have to offer Mr. Hothem the opportunity to fill the position taken by Mr. Smoot. (Docket 104 at p. 39). "[T]he City would get more bang for its buck by transferring some of the administrative duties of Hothem to Hoffman, having Smoot perform some of the duties of Hothem, and have Smoot perform additional duties that Hothem was never able to perform." Id.

Without the administrative duties which were being transferred to the public works director, comparing Mr. Hothem's position to the position which Mr. Smoot assumed before the end of December 2009 shows those job descriptions are nearly identical. Compare Dockets 74-4 at pp. 1-4 and 90-18 at pp. 1-3.

In a summary judgment analysis, plaintiffs are entitled to all reasonable inferences. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986). Mr. Hothem was qualified to take the position of Custodial/Maintenance Technician IV/Foreman. But for Mr. Hothem's age, his seniority with the City would suggest he was entitled to consider the post-RIF position.

In similar fashion, Mr. Stevens' pre-termination job description and the job description for the position Mr. Hauf filled are nearly identical. Compare Dockets 74-4 at pp. 5-7 and 90-30 at pp. 1-3.

43

The business judgment rule does not allow the City to discriminate based on age.  Plaintiffs have presented sufficient evidence that "but-for" their age, plaintiffs were qualified for and should have been offered these newly created positions as part of the RIF process.  Rahlf, 642 F.3d at 637.

Defendant's objection is overruled and the report and recommendation is amended to reflect this analysis.

### (5)  Mr. Hauf was almost immediately promoted to full time[14]

Coupled with plaintiffs' claim Mr. Stevens should have been offered the position filled by Mr. Hauf, the fact Mr. Hauf was rapidly increased from 19 3/4 hours to 35 hours per week creates a strong inference that a "but-for" pretext exists for the decision to terminate Mr. Stevens based on his age.

Defendant's objection is overruled.

### (6)  Salaries given to Mr. Smoot and Mr. Hauf were nearly the same as those of Mr. Hothem and Mr. Stevens

Mr. Hothem was making $14.52 per hour and when Mr. Smoot was transferred into the "new" position he was making $14.52 per hour.  (Docket 103 at p. 21 n. 18).  This was after the City transferred Mr. Hothem's

---

[14]In the report and recommendation the magistrate judge mistakenly identified Mr. Stevens as working 19 3/4 hours and then increased to 35 hours per week.  (Docket 103 at p. 49).  This was clearly a typographical error as it was Mr. Hauf the analysis was referencing.  The report and recommendation is amended to reflect this clarification.

administrative duties to Public Works Director Hoffman and gave him a $3.55 per hour raise.   Id. at p. 22.   Mr. Stevens was making $11.07 per hour and Mr. Hauf began his work as a custodial technician at $10.39 per hour.  (Docket 103 at pp. 22 & 41).  These wage comparisons provide a strong inference that a "but-for" pretext exists to not hire Mr. Hothem and Mr. Stevens for these two "new" positions because of their age.

Defendant's objection is overruled.

## ORDER

Based on the above analysis, it is hereby

ORDERED that plaintiffs' objections (Docket 106) are granted in part and denied in part.

IT IS FURTHER ORDERED that defendant City of Belle Fourche's objections (Docket 104) are granted in part and denied in part.

IT IS FURTHER ORDERED that the report and recommendation (Docket 103) is adopted in part, modified in part and rejected in part consistent with this order.

IT IS FURTHER ORDERED that defendant City of Belle Fourche's motion for summary judgment (Docket 47) is granted in part and denied in part.

IT IS FURTHER ORDERED that defendant Schneider's motion for summary judgment (Docket 57) is granted.

IT IS FURTHER ORDERED that defendant City of Belle Fourche's motion for summary judgment as to plaintiffs' purposeful age discrimination claim under the Age Discrimination in Employment Act is denied.

IT IS FURTHER ORDERED that plaintiffs' disparate impact age discrimination claims under the Age Discrimination in Employment Act are dismissed with prejudice.

IT IS FURTHER ORDERED that plaintiffs' First Amendment claims under 42 U.S.C. § 1983 are dismissed with prejudice.

IT IS FURTHER ORDERED that plaintiffs' wrongful discharge in violation of South Dakota public policy claims are dismissed with prejudice.

Dated March 27, 2012.

BY THE COURT:

/s/ *Jeffrey L. Viken*

JEFFREY L. VIKEN
UNITED STATES DISTRICT JUDGE